Epifania Rodríguez Rodríguez, Plaintiff and Appellant, v. Central Cambalache, Inc., Defendant and Appellee.

No. 9030. Argued May 5, 1945.—Decided July 6, 1945.

*A. Reyes Delgado, P. Santos Borge,* and *L. Mercader* for appellant.
*G. Zeno Sama* and *Largé & Lecároz* for appellee.

MR. JUSTICE DE JESÚS delivered the opinion of the court.

The plaintiff, owner of 14 rural properties having a total area of 485 acres (*cuerdas*), situated in Arecibo, on September 10, 1926, executed a contract with the defendant for advances for agricultural purposes in connection with some of said properties. The contract was to begin with the grinding season of 1927 until the end of that of 1931. To secure the advances to be received, plaintiff encumbered the fruits of the properties subject to the contract of advances and executed a mortgage in favor of defendant on all her properties for $10,000. At the end of the 1929 season plaintiff owed to the defendant, for advances for that year and previous ones, the amount of $17,165.80. But since defendant also had a mortgage credit on one of said properties for $1,920.82, which together with the interest accrued until September 20, 1929, amounted to $2,036.06 and had also acquired a mortgage credit executed by the plaintiff in favor of America Boneta for $1,120, which with interest added amounted at that time to $1,200, the plaintiff's debt amounted to about $20,401.86. In order to pay said debt plaintiff agreed with the defendant by deed No. 53 of September 20, 1929, before Notary Miguel Santoni, to convey to it all her properties, except one of 15 acres which she retained. As part of the consideration of this contract, the defendant delivered to the plaintiff the amount of $6,000 in cash and cancelled that part of the mortgage of $10,000 which encumbered the 15-acre property. Among the properties which the defendant received there were some encumbered with mortgages which it agreed to pay.

From the prayer of the amended complaint filed on February 8, 1943, it is inferred that the original complaint was filed on September 1942. It prayed for judgment decreeing: that the acts and contracts mentioned in the complaint are null and void; that the properties described therein belong to the plaintiff; that the defendant must return them to plaintiff, and refund $245,094.88, as damages sustained until September 1942, with interest at 6 per cent per annum from the filing of the complaint—September 1942—plus $21,250 for each year during which defendant withholds the properties, from September 1942 until the termination of the suit, with legal interest and $15,000 as attorney's fees and costs.

The grounds set up by plaintiff to seek the annulment of the deed of September 26, 1929 are the following: That at the time of receiving those properties in payment of debt, the defendant, which is an agricultural corporation engaged in the planting and grinding of sugar cane, possessed more than 500 acres of land; that the acquisition of plaintiff's properties was in violation of the Joint Resolution of Congress of the United States, approved May 1, 1900; that the conveyance of those properties was carried out under defendant's threats and that part of the advances claimed by defendant had not been given to the plaintiff for advances for agricultural purposes, but to purchase land, of which fact the defendant was aware when it delivered the money to plaintiff. She further alleged that defendant, in order to increase its credit against the plaintiff, acquired both mortgages above-mentioned, thus increasing its credit against her to an amount which she was unable to pay.

The lower court dismissed the complaint and imposed costs on the plaintiff.

The main question in the instant case, to wit: whether the acquisition of land by an agricultural corporation in excess of 500 acres is null and void, and whether that nullity may be alleged by the person who has conveyed to

202

it the properties in excess of said 500 acres demanding the return of the land without tendering the purchase price thereof, has already been decided by this court in *Campos v. Central Cambalache,* 64 P.R.R. 57.

We held in that case that § 3 of the Joint Resolution approved by the Congress of the United States on May 1, 1900, expressly authorizes the corporation to makes loans upon real estate security and acquire real estate when necessary for the collection of loans on condition that it shall dispose of the real estate so obtained within five years after receiving the title. We also held that the violation of the Joint Resolution did not entitle the plaintiffs to seek the annulment of the title and the recovery of the properties together with the fruits yielded or that should have been yielded; that the title that a corporation may have on real property in violation of said Resolution is valid against everyone except against The People of Puerto Rico, and if the latter does not institute the proper proceeding against the corporation, not only does the corporation hold a valid title but it may also convey it validly to any other person.

■ Although it appears from the evidence that the defendant corporation had in fact acquired the two mortgage credits which other persons held against the plaintiff, the record does not disclose if such credits were acquired by the corporation in payment of debts which their owners might have had in favor of the defendant; but even assuming that the defendant acquired them with the sole purpose of increasing its credit against the plaintiff, that purpose, no matter how wicked, does not avoid their acquisition. Moreover, what the law prohibits is the acquisition of land in excess of 500 acres.

■ Plaintiff's witness, Remigio Martínez Badía, attorney-in-fact of the former and her administrator, testified that on several occasions he had borrowed money from the defendant in plaintiff's name, to purchase lands for her, and

that he had made clear to the defendant the purpose of the loan, and, it being so, the $17,165.80 claimed by the defendant as having been given for advances had been given, in part, for the purchase of land, the defendant not being authorized to make that kind of loans. But that same witness testified that occasionally plaintiff, after paying the advances, had surplus money; and when she was unable to settle the account in full, it had been carried over to subsequent years. The witness did not specify at what time nor what amounts had been delivered by the defendant to the plaintiff for the purchase of land and we can not determine from the record whether that money was paid by the plaintiff to the defendant at some time when in settling the accounts for advances she had been able to pay in full what she owed for that year and previous ones.

As to the duress or threats that plaintiff alleges were exerted by the defendant to compel her to convey the properties, the record does not disclose any such conduct on the part of the defendant and it was so found by the lower court. As the court *a quo* correctly stated, the fact that the defendant should disclose its intention to sue the plaintiff or even threaten her with judicial proceedings in order to collect the outstanding credits, does not mean that the enforcement of that right amounted to any duress or threat which rendered the contract void.

The conclusion which we have just reached makes it unnecessary to discuss the second cause of action concerning the fruits the properties yielded or should have yielded; the plea of prescription alleged by the defendant; and the sale of the property which defendant alleged it had made to the Land Authority.

The judgment appealed from should be affirmed.